## UNITED STATES OF AMERICA

*v.*

## LORRIN A. THURSTON et al.

### June 24, 1912.

1, 2.  *Eminent Domain:*  Statement of the case.

3.  *Same:*  Private property may not be taken for public use without "just compensation."

3, 5.  *Same—Just compensation:*  Just compensation includes a full equivalent for the property taken and for any injury to other property of the owner, caused by the taking.   It is the fair market value of the property at the time of the taking, which is what it would bring at a sale without pressure, together with the damage caused by the taking to other property of the owner.

4a.  *Same—Appraisement of value:*  Ordinarily the lessor's interests, together with the interests of the lessees and sub-lessees, represent about the value of the property unincumbered.

4b. *Same—Market value of a lease:* Ordinarily obtained by ascertaining how much the unexpired term is worth, considering the expense of maintaining it. If such expense is greater than the money that can be realized from it by sub-leasing or otherwise, it is worth nothing. If the rental is less than the yearly value, compensation should be allowed the lessee for the difference. Same is the case with sub-leases.

4c. *Same—Lessor's interests:* Surplus of the rent over his expense in keeping the property in rentable condition, and present worth of permanent improvements placed on the leasehold by lessee to go to lessor at end of lease.

6. *Same—Permanent improvements made by lessee:* As such improvements increase the value of the leased premises they consequently increase the value of the lease, which to the lessee is a diminishing value from year to year.

7. *Same—Method of assessment:* Ascertain whole value, then apportion the amount between parties in interest—owners, lessees and sub-lessees. Rule not applicable in case of radical depreciation of property.

8. *Same—Expert Witnesses:* Valuations by expert witnesses based upon previous sales and rentals of similar adjacent property, or upon their general experience, is evidence to be considered by the jury in fixing the value of the property in question.

9. *Same—Elements of value:* Conditions and surroundings of the property; its availability for valuable purposes in view of its situation; the business demands of the locality and as they may be reasonably expected to develop in the near future, and its adaptability for other uses so far as they might enhance its market value, all belong to the owners of the several interests ,as elements of the money's worth of the property, and may be considered so far as supported by the evidence.

10. *Same—Testimony of possible improvements:* Testimony concerning improvements that might profitably be added to the property in the future, cannot be considered as evidence of damage by the taking, but may be considered as showing the uses to which the property is adapted for the purpose of ascertaining its present value.

11, 12. *Same:* Instruction as to interest rates and rates of discount.

13, 16a. *Same—Tax returns; insufficient return:* Tax returns are competent evidence as admissions against interest. Fact of insufficient tax return not to prejudice party making it, in these proceedings.

14, 15. *Same—Hawaiian rule:* Instruction as to Hawaiian rule of eight years' rental as a basis of value for taxation purposes.

16a. *Same—Same:* Evidence of aggregate eight years' rental not binding but to be considered with all the evidence.

16b. *Same—Interest:* Duty of jury to determine value of property at the initiation of these proceedings without any question of interest.

17, 18. *Same:* Instruction as to weighing the testimony including the knowledge gained by the jury in its "actual view" of the premises.

19, 20. *Same:* Instructions as to expert testimony, expert witnesses being usually paid for their services and work of preparation by the parties calling them.

21. *Same—Preponderance of evidence:* Instructions.

22. *Same—Movable fixtures:* Award to include damage to "movable fixtures" caused by their detachment from buildings and removal to another locality.

23. *Same—Decree of condemnation—Leases, lessees and tenants:* Leases are cancelled and subsequent rent dues otherwise to accrue, are extinguished by a decree of condemnation.

24. *Same—Burden of proof:* Instructions.

25. *Same—Vigilance of counsel; inferences:* Instructions.

26. *Same:* General instructions to jury.

27. *Same:* Suggestions as to form of verdict.

*Eminent Domain:* Instructions to jury.

*R. W. Breckons,* U. S. District Attorney, and *C. C. Bitting,* Assistant U. S. Attorney, for plaintiff.

*C. H. Olson (Holmes, Stanley & Olson* with him) for defendants H. Cushman Carter, Herbert Austin and Walter Austin.

*L. J. Warren (Smith, Warren & Hemenway* with him) for defendants Bank of Hawaii, Limited, and Charles M. Cooke, Limited.

*M. F. Prosser (Frear, Prosser, Anderson & Marx* with him) for defendant Hawaiian Trust Company, Limited.

Dole, J. Charging the jury:

[1]. Under proceedings by the United States of America to condemn certain lands in Honolulu of the Territory

of Hawaii, for the enlargement of the existing site for government offices of the United States, under an act of the Congress of the United States approved June 25, 1910, a separate trial was allowed to the parties interested in that portion of the premises sought to be condemned, held by the Hawaiian Trust Company, Limited, a corporation, the Bank of Hawaii, Limited, a corporation, and Charles M. Cooke, Limited, a corporation, to wit: the heirs at law of James W. Austin, deceased, and the trustees under his will, H. Cushman Carter, Trustee of John H. Cummins and others, his relations and connections, as owners in fee simple of such portion of the said premises; and the Bank of Hawaii, Limited, the Hawaiian Trust Company, Limited, and Charles M. Cooke, Limited, as lessees of such portion of the said premises;—all respondents herein.

[2] It is admitted that the said heirs at law of the said James W. Austin, deceased, and the trustees under his will, and the said H. Cushman Carter, trustee aforesaid, are the owners in fee simple of such portion of the land sought to be condemned according to their respective divisions thereof as shown by the evidence, to wit: 2832 square feet to the Austin Estate, and 664 square feet to the Cummins Estate, and of the improvements respectively situated thereon, subject only to the leases which have been admitted in evidence as follows: The ownership of the Austin Estate is subject to a lease to E. A. Jones (Exhibit F), dated October 1, 1893, and assigned to the Bank of Hawaii, Limited, December 27, 1897, expiring October 1, 1918; to a sublease of E. A. Jones to Charles M. Cooke (Exhibit 36), dated September 1, 1894 and expiring September 1, 1918—admitted to have been assigned to Charles M. Cooke, Limited, and by it subleased to the Hawaiian Trust Company, Limited, by a sublease (Exhibit J), which subleases the floor space of the building erected upon the area leased by Exhibit 36 and the area leased by lease (Exhibit C) to the Hawaiian Trust Company, Lim-

ited, dated August 19, 1905, expiring September 1, 1918; to a sublease of the Bank of Hawaii. Limited, to the Hawaiian Trust Company, Limited (Exhibit H), dated August 19, 1905, expiring October 1, 1918; to a lease to the Hawaiian Trust Company, Limited (Exhibit E), dated April 14, 1910, expiring April 1, 1918; to a lease from the Bank of Hawaii, Limited, to Charles M. Cooke, Limited (Exhibit I), dated January 15, 1909, expiring October 1, 1918; and to a lease from Charles M. Cooke, Limited, to the Hawaiian Trust Company, Limited (Exhibit J), dated August 19, 1905, expiring September 1, 1918. The ownership of H. Cushman Carter, Trustee, is subject to a lease to Charles M. Cooke (Exhibit C), dated September 1, 1894, expiring September 1, 1918—admitted to have been assigned to Charles M. Cooke, Limited, sub-leased to the Hawaiian Trust Company, Limited (Exhibit J), and to a lease to the Hawaiian Trust Company, Limited (Exhibit D), dated August 19, 1905, expiring September 1, 1918.

[3] The Constitution of the United States provides that private property shall not be taken for public use without just compensation. It is your duty to see that the compensation is just, not merely to those whose property is taken but to the public which is to pay for it; you are to treat both sides fairly and impartially. The values are not to be diminished or depreciated because the owners are compelled to part with their titles to the United States, nor increased or exaggerated because the government desires to acquire the premises. The compensation, in order to be just, must be not only a full equivalent for the property taken but also for any injury to other property of the respondents caused by the taking. Such compensation must be estimated as the fair market value of the property at the time of the taking, which, in this case, is December 23, 1910, together with the damage caused by the taking to other property of the respondents. This market value is not to be ascertained by what the property would bring

at a forced sale, but by what it would fairly bring for any purpose if the owners themselves, without pressure, should offer it for sale.

[4a] In assessing the value of property like this, where there are fee simple interests subject to leases and subleases, the aggregate value of all the interests will ordinarily equal the value of the property, as if it stood without incumbrance of any kind; that is, if the leases and subleases have been consummated in good faith under ordinary business conditions, and if the property has experienced no violent or unusual injury whereby its value has been radically diminished, the lessors' interests together with the interests of the lessees and sublessees represent about the value of the property unincumbered. This is evident when we consider that each lease and sublease made under ordinary conditions, is, at the time it is made, evidence of the approximate value of the property leased. The reason for this is that in the open market business men will hold a property for lease at a figure which will net them so much per cent upon its market value, according to the business conditions of the locality.

[4b] The market value of a lease to the lessee is of course what it will sell for in the open market. This is ordinarily estimated by ascertaining how much the unexpired term is worth, taking into consideration the rents, taxes and other charges which the lessee must pay to maintain it. Some leases are worth nothing in the market because the rent and fixed charges absorb the whole rental value of the property, and there is nothing left of value to tempt a purchaser. If the rental is less than the yearly value, compensation should be allowed the lessee in accordance with the difference.

[4c] The lessor's interest in a leasehold is determined by the net rental over and above the expenses he is required to assume in keeping the property in a rentable condition. This rule applies to sublessors, the value of their interests

being ascertained by the rent they receive discounted by the rent they have to pay as well as by the other expenses they must assume, and should include the present worth of such permanent improvements as are placed on the premises by the lessee, to become the property of the lessor at the termination of the lease. The accumulation of such net rentals for the balance of the lease, discounted according to the table in evidence at such rate of discount as you may adopt, will give the present value as of December 23, 1910.

[5]   Counsel representing lessees in this case have made the point that a lease may have a value independent of the value of the land; that it is valuable as a contract for the payment of money, even though the property should have ceased to be worth what it was. This is true, but hardly has a practical application to this case, inasmuch as the evidence tends to show that the property upon which the leases are based has been rising in value for several years previous to the time these proceedings were begun. In any case the holder of a lease is entitled to such amount as it could be sold for if freely offered for sale by the owner. It is admitted in this case that there is no reason to doubt the continuing ability of the Hawaiian Trust Company, Limited, to meet its rents under the leases held by it.

[6]   It is urged by counsel for the Hawaiian Trust Company, Limited, that it has made permanent improvements upon the premises held by it under lease, and therefore it should be awarded the value to it for the use of such improvements during the balance of the term of its leases in addition to such award as you may make in its favor for the value of its leasehold interests. You are, however, instructed on this point, that permanent improvements placed on the leased premises in question by the lessees, which will revert to the owner of the land at the end of the term, are to be considered only as enhancing the value of the property leased and consequently the value of the leases. The amount they have cost is, of course, one of the

elements which enters into this question. How much such improvements have increased the value of the leasehold is for you to say. They represent a value to the lessees. that would gradually decrease as the use thereof continues through the diminishing term of the lease. In this regard I further instruct you that it is admitted that the Hawaiian Trust Company, Limited, pays an annual rental for the improvements referred to of $620 per year and that such rental has been paid in advance for the entire term of the respective leases; in considering the value of the leasehold interest of the Hawaiian Trust Company, Limited, this should be considered.

[7] In assessing the value of property under eminent domain proceedings, the usual rule is to ascertain first the value as it would stand without incumbrance of any kind, and then to apportion the amount arrived at between the parties in interest—the owners of the property, and, as in this case, the lessees and sublessees. Although there are some circumstances which would render this rule unsuitable, as for instance, the radical depreciation in value of the property subsequent to the execution of leases thereof, no such condition exists in this case. You are therefore instructed to follow the rule above set forth,—the aggregate interests of the lessors and lessees making up the value of the whole property. In so doing the statement of the witness Reidford, giving the present worth of one dollar under different contingencies and rates of interest and discount, and the application thereof, may be taken into the jury room by you to assist in your calculations.

As there are two owners of the real estate in this trial, to-wit: the Austin Estate and the Cummins Estate, I suggest to you that you first reach a conclusion as to the unincumbered value of the whole property and then apportion such value between the said owners of the fee, and thereafter make the apportionment of such valuations be-

tween the leasehold interests of lessors and lessees and sub-lssees of each title respectively.

[8]   In arriving at a valuation of the property involved in this trial, the expert witnesses had the right to take into consideration sales and rentals of similar adjacent property occurring before December 23, 1910, and their valuations based upon evidence of such sales and rentals, or based upon their general experience, may be considered by you in establishing the rental value of the property in question.

[9]   In estimating the value of the leasehold interests in the premises as well as the present value of the whole property, you are to take into consideration under the evidence the conditions and surroundings of the property, and its availability for valuable purposes, having regard to its situation and the business wants of the locality, or such as may reasonably be expected in the near future, as far as the same appears by the evidence.  The adaptability of the property to uses other than those to which it is applied, so far as such other uses may enhance the market value of the same, may be considered.  This includes every element of usefulness and advantage in the property.  If it possesses advantage of location, either generally or for any particular kind or kinds of business, including the kind of business actually carried on on the premises; if it be available for any other beneficial purpose for which you can see from the evidence it might reasonably be suited and which would affect the amount of compensation;—all these elements of value belong to the owners of the several interests and are to be considered in estimating its value.  It matters not that the property might be used even for the least valuable of all the ends to which it is adapted, or might be put to no profitable use at all.    All of its capabilities are theirs, and must be taken into the estimate.  It does not necessarily follow, from the fact that a piece of land may be unimproved or unused, that it has no rental or market value.

[10]   I charge you that while you cannot properly con-

sider testimony respecting improvements that might in the future be added to the property, as evidence of damage by showing that such improvements would be a profitable investment, you are nevertheless entitled to regard such testimony as illustrative of the uses to which the property may be adapted, for the purpose of ascertaining its present value.

[11]   If, in arriving at your conclusions in this case, you should consider in any way the rental value of the property and the amount of interest which money should yield in the Territory of Hawaii, you have the right to take into consideration, together with all the other facts in the case, the laws of the Territory of Hawaii relative to interest rates. In this connection I charge you that under the laws of the Territory of Hawaii, when there is no express contract in writing fixing a different rate, interest shall be allowed on contracts at the rate of eight per cent. per annum, and that in condemnation cases the judgment finally entered shall, if payment be delayed for more than thirty days after the entry of the judgment, bear interest at the rate of seven per cent. per annum; and that interest at the rate of six per cent. per annum shall be allowed on any judgment before any court in any civil suit. These rates are not binding on you in your consideration of the question of value as based on rents, but may be considered by you together with all of the facts in the case.

[12]   It is further provided by the laws of the Territory of Hawaii that the rate of discount to be assessed in computing the present value of future interests and contingencies liable under the inheritance tax shall be five per cent. per annum. This rate also is not binding on you.

[13]   In this case evidence has been introduced by the government tending to show certain valuations of this property, sworn to by the agents of the owners before the commencement of these proceedings, to-wit, certain tax returns filed with the assessor, pursuant to the laws of the Territory of Hawaii. Such sworn returns, made by the

agents of the owners of the property to the assessor, are admissions against interest, and are competent evidence tending to show what such agents then believed the value of the property to be. You may therefore consider such returns along with other evidence in the case, upon the valuation of this property, and give them such weight as you may deem just.

[14]  In considering, under the instructions of the court, the weight or effect to be given to the returns for the purpose of taxation admitted during the trial of this case, you are instructed that the term "full cash value" as used in the returns, and as used in the laws of the Territory of Hawaii, means market value. You are further instructed that the provision of the laws of the Territory of Hawaii fixing as a basis for the purpose of taxation of real property under lease, a figure equal to the sum of eight years' rental thereof, applies only in cases where such amount is not "manifestly unfair." It is a rule of law established for the determination of values in cases where it cannot be said that the rate is unfair. It is not a rule which arbitrarily permits the taxpayer to return his property for taxation on that basis, or permits the government to fix the value of the property for the purpose of taxation on that basis arbitrarily. A return of property by a taxpayer on this basis amounts to a declaration by him, under oath, that the value so fixed is not in his estimation "manifestly unfair."

[15]  This rule of valuation based on the sum of eight years' rental of leased property to be followed unless the result is "manifestly unfair," is somewhat misleading and confusing to the taxpayer, who is required to swear that his return is the full cash value of the property. "Manifestly" is a strong word, and the conscientious taxpayer feels that under its protection, he is safe in adopting the assessment of the previous year or otherwise of making a conservative return somewhere near the sum of eight years' rental, unless some strong and positive reason for making a radical change

is forced on his consciousness; and this is more easily the case, as any return is merely tentative, and as such is submitted to the assessor for his approval and revision.

[16a]   If you find that any of the tax returns admitted in evidence are lower than they should have been, in that case you should nevertheless award the full value of the property sought to be condemned as supported by the consideration of all of the evidence in the case.   It is not within your province to punish in this suit any person for making a lower return for taxes than the law requires; the sole question you should consider is the actual value of the property being condemned.

[16b]   In determining any damages or compensation, you are not to award interest, or to make any allowance for interest, but your duty is to determine the value of the property at the date of the commencement of these proceedings, December 23, 1910, without interest.

[17]   In ascertaining the market value of the property as a whole and of the leaseholds, you are to consider and weigh the testimony of the witnesses and all the facts proven in the case, and apply also your own knowledge of the premises, their nature, character and surroundings, as ascertained by the actual view which you had there on the ground.   And in determining what weight the testimony of the witnesses shall have, you are to take into consideration the testimony both for the government and for the claimants, the witnesses' opportunities of knowledge of the subject on which they have spoken, whether they are conversant with all the elements that go to make up or assist in determining the value of this particular piece of property; and, taking into consideration the facts, you may look to the reasons which the witnesses both for the government and the claimants have given, and decide whether the conclusions which they have arrived at and to which they have testified are supported by the reasons which they have assigned as leading to or supporting such conclusions.

[18]   In determining values you are to consider and weigh the testimony of the witnesses, and all the facts proven in the case, in the light of your own knowledge of these premises, and their nature, character and surroundings, as ascertained by the actual view which you had there on the ground, but not your special knowledge, if any, of the premises, gained otherwise than from the view itself and from the evidence in the case.

[19]   The question of the credibility of witnesses is one for your sole consideration. In passing on this question you have the right to take into consideration the fact, if it has been established in the case, that any of the witnesses have been employed by any one of the parties for the purpose of preparing estimates for use as testimony in this case, giving to this fact, if it has been established, such consideration as you think it may be entitled to, under all of the facts in the case. And in considering this point, if you come to the consideration of it, you may take it as the common practice to pay expert witnesses for their work and time in preparing and giving such testimony.

[20]   Testimony as to value may be received from the mouths of witnesses who are duly qualified to testify in relation to the subject of inquiry, although the jury, even if such testimony be uncontradicted, may exercise their independent judgment. You are not bound by the opinions which these witnesses have given as to the value of the premises. They are proper to be considered by you as part of the proof on the question of value, as the testimony of men experienced in such matters, and whose judgment may aid yours, but it is your duty to settle and determine this question of value from all the testimony in the case, and to award to the owners of the land such amount as you believe to be just compensation as defined in these instructions.

[21]   I further instruct you that you are to reach a final conclusion in this case by a preponderance of the evi-

dence, by which is not meant the evidence given by the greater number of witnesses, but the superior strength of certain evidence, and the greater weight which that evidence may in your judgment be entitled to. In weighing the testimony you should take into consideration the opportunities of the witnesses for seeing or knowing the things about which they testify, and especially so when testifying as experts as to the value, and also their interest or lack of interest in the result of the action, their competency from a standpoint of general knowledge and experience, the probability or improbability of the truth of their several statements and the reasonableness of their opinions when testifying as experts, and from all the circumstances, you are to determine where the weight or preponderance of the evidence rests.

[22] In addition to the amount which you will award to the Hawaiian Trust Company, Limited, for the taking of its leasehold interests in the land and permanent improvements, you must separately assess and award to it the damage to its movable fixtures caused by their detachment from the buildings where they are placed and their removal to another locality.

[23] As a matter of law, a decree of condemnation of real estate operates to cancel all leases of the property, and to extinguish the obligations of lessees and tenants thereafter to pay their rents which would otherwise subsequently accrue.

[24] The government has established its right to take the property of the respondents and the necessity for the taking, and it has become incumbent upon them to establish the fair market value thereof as defined in these instructions. The burden of proof is upon them, therefore, to establish such value by a preponderance of evidence.

[25] The fact that counsel on all sides have shown earnestness and vigilance in the conduct of the case, does not justify you in a conclusion that the United States is

trying to acquire the land in question for a consideration which would be less than a just compensation to the owners and lessees, or, on the other hand that the owners and lessees are trying to get at your hands a consideration for the property which would be more than a just compensation therefor. Such vigilance on both sides—the one inevitably taking a conservative view and the other an optimistic one as to the value, is desirable for the exhaustive investigation of the question at issue, inasmuch as the real responsibility is with you, a disinterested body which only cares to reach a right and fair judgment between the parties.

[26]   The work of jurors in trying a case like this is one of public importance and one requiring unusual patience, attention and study, and when it is taken up, as from my observation I feel that you have taken it up, cheerfully and faithfully, it is evidence of a high degree of public spirit. The inconvenience attending the trial lasting for many weeks must have been very serious to you all. I feel that you have given that careful attention to the great mass of detail which is necessary in order that you may be able to approach the case with a clear understanding of all its various aspects, and decide it not only from an impartial standpoint, but also from the standpoint of good judgment. This case is one of such complication as will severely tax your powers of analysis and comparison, and will call for your best study in order to reach a point of view that will enable you to clearly and logically see your way to a just conclusion upon the rights of all the parties as set forth in the evidence.

[27]   Finally, I instruct you that you are not bound to use any particular form of verdict, but you are at liberty to use the following: and although you are free to take any other form, the third part must be given in any case:

## VERDICT.

We, the jury in the above entitled cause, upon the issues framed therein between the plaintiff the *United States of America,* and the respondents *Herbert Austin, Walter Austin* and *Edith Austin, H. Cushman Carter, Trustee, The Bank of Hawaii, Limited, Charles M. Cooke, Limited,* and *The Hawaiian Trust Company, Limited,* find the following verdict:

### FIRST.

That the fair market value on December 23, 1910, of the land and permanent improvements thereon upon the southeast side of Fort Street between King and Merchant Streets in Honolulu, the area whereof is 3496 square feet as shown upon the map in evidence as Exhibit A, was the sum of ........................... dollars (...........................) which sum we hereby apportion between and award to the several parties in interest on this trial as follows:

### *Award No. 1.*

To *Herbert Austin, Walter Austin* and *Edith Austin,* individually and as Trustees under the will of James W. Austin, deceased, the sum of ........................... dollars ($...........................) as compensation for their interest in the said land and improvements and rentals accruing to them under the outstanding leases.

### *Award No. 2.*

To *H. Cushman Carter,* Trustee for the Cummins Estate, the sum of ........................... dollars ($...........................) as full compensation for his interest in the said land and improvements and rentals accruing to him under the outstanding leases.

### *Award No. 3.*

To *The Bank of Hawaii, Limited,* the sum of ........................... dollars ($...........................) as compensation for its interest as lessee under the lease made by James W. Austin to E. A. Jones, October 1, 1893, and assigned by Jones to The Bank of Hawaii, Limited, December 27, 1897.

## *Award No. 4.*

To *Charles M. Cooke, Limited, the* sum of ............................ dollars ($............................) as compensation for its leasehold interests held under the lease made to it by The Bank of Hawaii, Limited, January 15, 1909, and the lease made by E. A. Jones to C. M. Cooke, September 1, 1894, assigned by C. M. Cooke to Charles M. Cooke, Limited, and the lease made by the Cummins Estate to Charles M. Cooke, September 1, 1894, assigned by C. M. Cooke to Charles M. Cooke, Limited.

## *Award No. 5.*

To *The Hawaiian Trust Company, Limited,* the sum of ............................ dollars ($............................) as compensation for its leasehold interests under the lease made to it by The Bank of Hawaii, Limited, August 19, 1905, and the lease made to it by Charles M. Cooke, Limited, August 19, 1905, and the lease made to it by the Austin Estate, April 14, 1910, and the lease made to it by the Cummins Estate, dated August 19, 1905.

## SECOND.

We further award to *The Hawaiian Trust Company, Limited,* as the amount of damage that will be sustained by it by reason of the taking under these proceedings, being the damage to movable fixtures by way of detachment and removal, the sum of ............................ dollars ($............................).

## THIRD.

We find that all of the interest of *John A. Cummins, Kapeka M. Cummins, Charles Mahoe* and *Hattie Mahoe,* in the property is held and owned by the defendant *H. Cushman Carter* as *Trustee,* and that the award herein made to *H. Cushman Carter, Trustee,* covers all of the interest held by the said *John A. Cummins, Kapeka M. Cummins, Charles Mahoe* and *Hattie Mahoe* in and to said property.